HORACE BASSETT ET AL., Plaintiffs in Error, *v.* DAVID S. IRONS, Defendant in Error..

### December 9, 1879.

1. Where parties make an agreement subject to the printed rules of an association of which both are members, such rules become a part of their contract, and they are bound by them.

2. Where such association has an inspector whose duty it is to inspect goods sold by one member to another, if such inspector, with the seller's consent, fails to make an inspection within a given time, such failure is not a waiver on the buyer's part; the inspector's agency not extending beyond the inspection.

ERROR to the St. Louis Circuit Court.

*Affirmed.*

WAGNER, DYER & EMMONS, for the plaintiffs in error.

J. M. & C. H. KRUM and W. B. DOUGLAS, for the defendant in error: Where a contract is made subject to certain printed rules, referred to in the contract, such rules are as much a portion of the contract as if bodily incorporated therein. — *Sheldon* v. *Insurance Co.*, 22 Conn. 235, *245; *Adams* v. *Hill*, 16 Me. 215; *Sawyer* v. *Hammatt*, 15 Me. 40; May on Ins., sect. 158; *In re Park Commissioners*, 52 N. Y. 131; *Lewis* v. *Insurance Co.*, 2 Mo. App., 372. Executory contracts of sale contain mutual and concurrent conditions, and neither party can recover damages for breach of such contract without showing, either that he has performed his part of the contract, or that he has offered to perform and the other party refused to accept. -- *Callonel* v. *Briggs*, 1 Salk. 112; *Goodisson* v. *Nunn*, 4 Term Rep. 761; *Bean* v. *Atwater*, 4 Conn. 3, 13; *Dunham* v. *Pettee*, 8 N. Y. 508; *Denny* v. *Kile*, 16 Mo. 450, 455; *Bank* v. *Hagner*, 1 Pet. 455, 465. It being one of the terms of the agreement that if delivery was not made within a certain time after notice was given, the defendant might claim a non-fulfilment, time must be considered as of the essence of the contract. — *Mason* v. *Payne*, 47 Mo. 519;

*Pickering* v. *Greenwood*, 114 Mass. 479; *Goldsmith* v. *Guild*, 10 Allen, 239.

LEWIS, P. J., delivered the opinion of the court.

The plaintiffs complain that the defendant failed to perform his contract with them, expressed in the following terms : —

"PROVISION CONTRACT.

"ST. LOUIS, January 30, 1877.

"I have this day bought, and hereby agree to receive and pay Messrs. Bassett & Lincoln for two hundred and fifty (250) bbls. mess pork, seventeen $\frac{20}{100}$ ($17.20) dolls. per bbl., to be delivered in St. Louis, Missouri, sellers' option, during month of March, 1877 ; said mess pork to be standard in every respect, as required by the rules of the Union Merchants' Exchange of St. Louis, and to be paid on delivery. This contract is subject, in all respects, to the rules and regulations of the said Union Merchants' Exchange, under which this contract is made.

"D. S. IRONS."

Among the rules of the Union Merchants' Exchange referred to in the contract are the following : —

"On time contracts, for either buyer's or seller's option, the time of delivery shall be before three o'clock P. M. of the day of maturity of contract, or of the day in which notice has been given to deliver or receive ; *provided*, that in the latter case the buyer or seller has had at least three hours' previous notice. When notice is given after twelve o'clock M., the time for delivery shall be the morning of the following day, by or before eleven o'clock A. M. When. notice of intention to deliver is given, and the delivery is not made, the buyer shall have a right to claim a non-fulfilment of the contract, and may proceed under the rules the same as if the time of the contract had expired and no tender had been made. When contracts require a specific

number of days' notice to be given to receive or deliver, notice can only be given within the time specified in the contract for the existence of the option.

"In all cases of sales of provisions as 'standard,' the inspector shall examine and inspect, when called upon, and shall decide if the property be up to the requirements; and he shall issue his certificate, stating correctly the condition and quality of the property inspected, and specify the defects, if any exist therein.

"In case any property contracted for future delivery is not received and paid for when properly tendered, it shall be the duty of the seller, in order to establish any claim on the purchaser, to sell it on the market at any time during the same or next business day after such default shall have been made, notifying the party in default within one hour of such sale, and any loss resulting to the seller shall be paid by the party in default; but nothing in this section shall be construed as authorizing unjust or unreasonable claims, based upon manipulated or fictitious markets."

These rules must be considered as forming part of the contract, so far as they may be applicable.

The testimony tended to show that on the first day of March, 1877, between the hours of twelve and one o'clock, the plaintiffs notified defendant's agent that they would on that day tender two hundred and fifty barrels of pork, in performance of their contract. Five barrels were sent in the afternoon of the same day to the agent's place of business, for inspection. They were there inspected by the official inspector of the Exchange, who found part of the lot in quality below the proper standard. On the next day, plaintiffs requested the inspector to come to their place of business in the afternoon, and inspect another lot. The inspector preferred doing so on the following day. Plaintiffs assented to his proposal, assuming that they had the entire month of March in which to make the delivery or tender. On the

third day the new lot was inspected, and found to be of the proper standard. Plaintiffs on that day made a tender of the pork to the defendant's agent, who refused to receive it, on the ground that the tender came too late, and should have been made before eleven o'clock A. M. on the preceding day. The defendant himself was also applied to by the plaintiffs, and he indorsed and adopted the action of his agent. There was some testimony about the market price of pork at the different dates mentioned, but in view of the final action of the court it is not material to the present inquiry. The court instructed that, upon the whole evidence, the plaintiff could not recover.

When it was shown that the plaintiff, having given notice of their intention to deliver on the first day of March, yet failed to tender or deliver a proper merchantable article, duly certified by the inspector to be such, at or before eleven o'clock in the morning of the next following day, the whole case was proved out of court. There was nothing to go to the jury. The rule of the Exchange is explicit, and, as a part of the contract, conclusive against the plaintiffs. In such a state of facts, " the buyer shall have a right to claim a non-fulfilment of the contract, and may proceed under the rules the same as if the time of the contract had expired and no tender had been made." This the defendant did, and there was an end of the plaintiffs' claim.

We see nothing in the position taken, that the inspector was an agent for both parties, and that his postponement of the inspection until the third day was a waiver as to time on the part of the defendant. The inspector's agency, if any exists, extends to nothing beyond the inspecting of the commodity and certifying its grade. This he does for both parties, and in their common interest. But he has nothing whatever to do with the terms of the contract, or the time or manner of its fulfilment. No action of his could deprive either party of any right secured to him by

the original terms of the contract, or by the Exchange rules which are adopted into it. It follows that the judgment must be affirmed, and it is so ordered. All the judges concur.